HARRISON v. STATE.

4759                                          262 S. W. 2d 907

Opinion delivered December 14, 1953.

Rehearing denied January 11, 1954.

774

*W. H. McClellan,* for appellant.

*Tom Gentry,* Attorney General and *Thorp Thomas,* Assistant Attorney General, for appellee.

J. SEABORN HOLT, J.   On a charge of rape, a jury found appellant guilty of assault with intent to rape, and fixed his punishment at a term of three years imprisonment, under § 41-607, Ark. Stats. 1947, which provides: "Whoever shall feloniously, wilfully, and with malice aforethought assault any person with intent to commit a rape, and his counsellors, aiders, and abettors, shall, on conviction thereof, be imprisoned in the penitentiary not less than three (3) nor more than twenty-one (21) years."   This appeal followed.

—1—

For reversal, appellant first challenges the sufficiency of the evidence. The prosecuting witness, and victim of appellant's lust, testified that she was sixteen years of age and a student in the Arkadelphia High School; that she and appellant, Harrison, were returning in an automobile from Hot Springs to Arkadelphia, on Saturday night, June 27, 1953, and at a point where the "Tower Road" (a side road) led from the highway "he stopped and backed up and went up that little road." He had previously told witness what he was going to do to her. She saw a spring nearby and asked him to get her a drink of water and she planned to get out and run as he got the water, but that he did not give her a chance, but stood by her while she drank. After she drank the water, he immediately drove further up the road, stopped again and "told me what he was going to do again, so I started screaming and everything and he told me if I didn't shut my damn mouth he'd cut my throat. He had something in his hand and I got scared and I was so scared I couldn't do anything." He had her under the steering wheel and was holding something on her throat (which, on cross examination, she said was a knife) and that while she was resisting and screaming, and without her consent, he had intercourse with her. Other sordid details we do not set out.

Appellant admits that he had intercourse with the prosecuting witness, but insists that it was with her consent. The testimony is in conflict. There were only two people present at the time, appellant and the prosecuting witness. The jury evidently accepted the testimony of the prosecuting witness as true. It was not necessary that her testimony be corroborated. *Underdown* v. *State*, 220 Ark. 834, 250 S. W. 2d 131. The jury was the sole judge of the credibility of the witnesses and the weight to be given the testimony. We hold that there was ample evidence to support the jury's verdict. *Herron* v. *State*, 202 Ark. 927, 154 S. W. 2d 351 and *Waterman* v. *State*, 202 Ark. 934, 154 S. W. 2d 813.

—2—

Appellant next earnestly argues that the trial court erred in instructing the jury that it could find the appellant guilty of the lesser offense of assault with intent to commit rape, for the reason that he (appellant), in the circumstances, was either guilty of rape or no crime at all, and that an attempt to commit rape was not included in the charge of rape. We do not agree.

In *Bradshaw* v. *State*, 211 Ark. 189, 199 S. W. 2d 747, we said: " 'An assault with intent to commit rape is included in the charge of rape, and a conviction may be had of the former offense under an indictment for the latter. Mans. Dig., § 2288; *Davis* v. *State*, 45 Ark. 464; 1 Bish. Cr. Law, § 809. * * *

" 'If it be conceded that the testimony would logically demand a verdict of guilty of rape or nothing, it does not follow that a conviction of an attempt to rape should be avoided here. The jury had the power to return the verdict and the offense is less than the crime charged.' "

It was therefore clearly permissible for the jury to convict appellant of the lesser crime of assault with intent to rape, when charged with rape.

—3—

Appellant next argues that the court erred "in permitting Leon White, the father of the prosecuting witness * * * (and) the prosecuting witness to remain in the courtroom and not under the rule," during the trial. We find no merit to this contention. The court's action here was clearly within its sound discretion and we find no abuse of that discretion prejudicial to appellant's rights. *Chambers* v. *State*, 168 Ark. 248, 270 S. W. 528.

—4—

Appellant next argues that the court erred "in permitting Dr. W. A. Ross to answer the question of the prosecuting attorney as to what the finding of semen during his examination of the prosecutrix indicated to

him," his answer being to the effect that from his examination that it was his opinion that intercourse had taken place. In the circumstances, the opinion of this doctor was properly admitted. "When a witness has, by experience and education, gained special knowledge and skill relative to matters involving medical science, he is entitled to give his opinion thereon. 1 Greenleaf on Evidence, §§ 430c, 441b; 5 Enc. Ev. 534." *Miller v. State,* 94 Ark. 538, 128 S. W. 353.

—5 (a)—

Next appellant contends that the court erred in permitting Officer Otis Pennington to testify as to what he remembered about a statement made by the appellant during an investigation by the prosecuting attorney and the sheriff. The record reflects the following on this issue: "Q. What did he say, if you recall, what did he purport to tell happened on that morning? A. I wouldn't know all that he said. MR. McCLELLAN: If your Honor please, if he is going to tell about the statement, I want the complete statement or none at all. THE COURT: He can repeat everything that was said that he recalls, so long as the defendant was present. MR. McCLEL-LAN: I want to object to his testifying about a statement by the defendant unless he tells all the statement that was made. THE COURT: The court agrees that he will have to tell all he recalls that was said. MR. McCLEL-LAN: I still want to object unless he tells all that was said; not all that he remembers but all that the witness' statement contained. THE COURT: I have ruled on the objection."

In the circumstances, there was no error in permitting this witness to tell all that he remembered of appellant's statement. It appears that appellant's counsel cross-examined this witness, Pennington, at some length. He, therefore, had ample opportunity to bring out before the jury any portions of appellant's statements omitted by Pennington.

—5 (b)—

Appellant further argues that "the court erred in sustaining the objection of the State to the introduction of a pocket knife as an exhibit to the testimony of the witness, Otis Shepherd, over the objections and exceptions of the defendant." We find no error here for the reason that the proper foundation had not been laid for the introduction of this testimony. The record reflects that during the examination of witness, Otis Shepherd, and at the time the appellant offered to introduce the knife in question, the following occurred: "THE COURT: Q. Had you seen this knife in his (appellant's) possession earlier that evening? A. Not that evening, but I had seen it days before. I had seen it before. I don't recall seeing it that evening. I mean earlier that evening. THE COURT: Q. You don't know whether he had that knife that evening or not? A. I don't know. That's the knife I found in my car. THE COURT: The objection is sustained. The knife will not be introduced."

The above is the foundation upon which appellant sought to introduce the knife. This appears to be the only time at which appellant sought its admission. We hold, on the showing made, that the knife had not been properly identified and therefore there was no error. See *Walker* v. *State,* 215 Ark. 530, 221 S. W. 2d 402.

—6—

Appellant next argues that the court erred in refusing his requested instructions No. 7 and No. 9. We do not agree. His instruction No. 7 would have told the jury that it was the duty of the prosecuting witness "to resist with all the force and strength that is within her power, consistent with her safety, and to continue to resist as long as she is physically able." This instruction was properly refused in that it would require the prosecutrix to resist as long as she was physically able. This she was not required to do under the law. "The law does not require of the woman, who seeks to protect her chastity, that she shall resist as long as either

strength endures, or consciousness continues." *Zinn and Cheney* v. *State,* 135 Ark. 342, 205 S. W. 704.

Appellant's requested instruction No. 9 has been approved by this court in the above case of *Zinn* v. *State*. However, we find that the trial court gave substantially the same instruction covering, in effect, all points in appellant's instruction No. 8, as modified by the court. It is not error to refuse to give an instruction which is fully covered by another. The court is not required to multiply instructions. *Bly* v. *State,* 213 Ark. 859, 214 S. W. 2d 77.

Appellant also alleges error in the court's refusal to give his requested instruction No. 13. This instruction would have told the jury that if the prosecutrix failed to make a complaint, or if she exhibited friendliness after the act, that they could consider either or both of such findings on the question of consent. The answer to this contention is that the court gave appellant's instruction No. 12, which was, in effect, and substantially the same, as No. 13. What we have said in the above paragraph applies with equal force to this contention. There was no error.

Finally, appellant argues that the court erred in refusing to give his requested instructions No. 17 and 19. No. 17 was as follows: "Before the defendant can be convicted of assault with intent to rape, you must believe from the evidence that he assaulted the prosecuting witness, and at the same time intended to use whatever force was necessary to overcome her and have sexual intercourse with her, and unless you so find you should acquit him of assault with intent to rape."

The court covered this instruction in another to the jury, as follows: "Before you can find the defendant guilty in this case, you must find beyond a reasonable doubt; First, that the defendant made an unlawful assault upon the prosecuting witness; Second, that the assault was made by the defendant with the intention of using whatever force or intimidation that was necessary to overcome the prosecuting witness and have sexual

intercourse with her; Third, that the defendant actually had sexual intercourse with the prosecuting witness; and Fourth, that the sexual intercourse was accomplished forcibly and against the will of the prosecuting witness. Unless you find beyond a reasonable doubt that the defendant committed each and all four of these acts, it will be your duty to find the defendant not guilty.''

—7—

Instruction No. 19 was substantially and, in effect, the same as Instruction No. 18, which the court gave. As has been indicated, the court was not required to repeat or multiply instructions on the same issue. *Lee and Stewart* v. *State,* 200 Ark. 964, 141 S. W. 2d 842.

Other assignments of appellant have not been overlooked, but after a consideration of all, we find no merit to any of them.

The judgment is affirmed.

Justices GEORGE ROSE SMITH and ROBINSON dissent.

SAM ROBINSON, Justice, dissenting. The majority opinion sustains the trial court in refusing to permit the knife to be introduced in evidence on the ground that the only foundation laid for its introduction is the testimony of Otis Shepherd. Shepherd's testimony is only one link in the chain of evidence constituting the foundation for the introduction of the knife. The majority should have considered also the testimony of the prosecutrix and John Beard, Lola Burrow, Rosalie Burrow, and the defendant Harrison; and when so considered, it will be found that the evidence is overwhelming to the effect that the knife which the defendant sought to introduce in evidence by the witness Shepherd belonged to the defendant Harrison, and that Harrison did not have the knife in his possession at the time the prosecutrix claims he threatened her with it. Of course it would be a jury question to say in the circumstances whether the defendant threatened the prosecutrix with some other knife; however there is no evidence indicating that the defendant had two knives.

In *Walker* v. *State,* 215 Ark. 530, 221 S. W. 2d 402, cited by the majority, the proffered testimony in regard to the ownership of the knife was hearsay; and furthermore there was no competent evidence in the record as to the ownership of the knife.

Although it is not disputed that the parties engaged in sexual intercourse, the jury by its verdict of guilty of assault with intent to rape thereby acquitted the defendant of the rape charge. To constitute the crime of assault with intent to rape, two things are necessary; there must exist the intent to rape and there must be an overt act toward the commission of the offense. *McDonald* v. *State,* 160 Ark. 185, 254 S. W. 549. There is no evidence in the record going to prove either element except the testimony of the prosecutrix, bearing in mind the jury found the defendant not guilty of rape.

As to the element of intent, the prosecutrix says the defendant stated he was going to rape her. The defendant denied making any such threat; no one except the two were present and therefore their testimony was the only direct evidence available on this point.

As to the overt act, the prosecutrix testified that in making the assault the defendant put a knife at her throat. The defendant denies this and in corroboration of his denial offered evidence tending to prove his contention. In support of his claim that he had no knife at the time of the alleged assault, it was shown that the prosecutrix and the defendant along with others had visited various places of amusement during the night, that while at one of these night spots defendant had let Bill Sturgis have his knife; and as defendant, Lola Burrow, Rosalie Burrow, Joan Beard, Otis Shepherd, and the prosecutrix were leaving the night club in Shepherd's automobile, defendant asked Sturgis, who was standing nearby, for the return of his knife and Sturgis handed the knife to Joan Beard who was sitting next to the window in Shepherd's car. It was shown that Joan put the knife in her lap and did not give it to defendant Harrison. It is the contention of the defendant that he never again had the knife in his possession. Later

Harrison and the prosecutrix transferred to an automobile belonging to Lola; but Lola, Rosalie, Joan, and Shepherd stayed in Shepherd's car. It was while the defendant and the prosecutrix were in Lola's automobile that the assault is alleged to have occurred.

The witness Joan Beard says that she went to sleep on the back seat of Shepherd's car and when she awoke, the knife was under her head. Shepherd says that he found defendant's knife in the back seat of his, Shepherd's car. He testified that he turned the knife over to the attorney for the defendant and identified it in court. Shepherd could not say he had seen the knife in the defendant's possession the night of the alleged offense; and for this reason, over the objection and exception of the defendant, the court held the knife was not admissible in evidence.

It will be recalled that although Shepherd could not say he had seen the defendant with the knife on the night in question, there was other evidence to the effect that on the night of the alleged assault, but prior thereto, the defendant had the knife, and that it was later found in Shepherd's automobile and therefore could not have been in the defendant's possession at the time the prosecutrix said he assaulted her with a knife. Furthermore it was shown by Otis Pennington, a deputy sheriff, that a short time after the alleged assault occurred he arrested defendant but on searching him found no knife.

For a conviction the state depended on the testimony of the prosecutrix to the effect that the defendant threatened her with a knife. Defendant denies that he had a knife at the time of the alleged assault, and produced substantial evidence corroborating his statement; but with the knife ruled out the evidence introduced by the defendant with reference to having no knife at the time of the alleged assault was actually harmful to him instead of being beneficial. Defendant says that on the night in question he had loaned his knife to Bill Sturgis; he introduced evidence to the effect that Sturgis later

handed the knife to Joan; that Joan put the knife in her lap and did not give it to the defendant; that later Joan went to sleep on the back seat of the automobile and on awakening found the knife under her head. It was shown that Shepherd, the owner of the automobile, later found the defendant's knife on the back seat of the car. It was further shown that the defendant was never anywhere near Shepherd's car, in which the knife was found, subsequent to the time of the alleged assault.

All of this evidence has a tendency to discredit the testimony of the prosecutrix with reference to defendant having assaulted her with intent to rape, and that the overt act of the assault consisted of threatening her with a knife. But one question was not answered to the satisfaction of the jury, and that was "Where is the knife?" It would naturally occur to a juror that if it is true defendant's knife was found on the back seat of Shepherd's automobile, then why was the knife not introduced in evidence?

The prosecuting attorney could very logically argue the case in this manner and it can be seen that the ruling was highly prejudicial to the defendant. Defendant says he did not have his knife when alone with the prosecutrix; that it was on the back seat of Shepherd's automobile; and yet it was not introduced in evidence. An analogous situation existed in *Ford* v. *State,* 220 Ark. 517, 248 S. W. 2d 696, which we reversed by reason of the court's refusal to permit a knife to be introduced in evidence where a similar foundation had been laid for the introduction of the knife, and where the question of whether the deceased had a knife was important to the issue. Here the question of whether defendant had a knife at the time of the alleged assault was very important to the issue since if he had no knife, the prosecutrix stood impeached on a very material point.

"An article of personal property, the relevancy of which has been shown by its identification with the subject matter of the crime, may be exhibited to the jury in the courtroom, either as direct evidence of a relevant fact, or to enable them to understand the evidence or

to realize more completely its cogency and force, or to assist the jury in solving a material, controverted, or doubtful point.'' *Underhill's Criminal Evidence,* 4th Edition, § 115.

''The intention to do great bodily harm . . . by means of an assault, may be inferred from the circumstances. Circumstantial evidence is usually the only available evidence of intention aside from the declarations of the accused. The intention may be inferred from the force or direction, or from the natural or contemplated result of the violence employed, from the weapon or implement used by the accused.'' *Underhill's Criminal Evidence,* 4th Edition, § 596. Likewise where, as here, the defendant is accused of using a weapon in making the assault, the fact that he had no such weapon is strong circumstantial evidence going to disprove the charge.

A sufficient foundation was laid for the introduction of the knife, and it is my conclusion that the trial court erred in sustaining the state's objection to its introduction by the witness Shepherd. Therefore I respectfully dissent.

Mr. Justice GEORGE ROSE SMITH joins in this dissent.