GREGORY ALLEN SPENCER *v.* STATE OF ARKANSAS

CR 73-84                                499 S.W. 2d 856

Opinion Delivered October 15, 1973

*Harold L. Hall* and *Garner L. Taylor Jr.,* for appellant.

*Jim Guy Tucker,* Atty. Gen., by: *O. H. Hargraves,* Deputy Atty. Gen., for appellee.

CARLETON HARRIS, Chief Justice. Gregory Allen Spencer was convicted in the Pulaski County Circuit Court of the crime of first degree rape, the jury fixing his punishment at life imprisonment in the Arkansas Department of Correction, and from the judgment entered in accordance with that verdict, appellant brings this appeal. For reversal, two points are asserted; first, that the trial court erred in refusing to give appellant's Requested Instruction No. 2, and second, that the evidence was insufficient to support the verdict. For convenience, the second point will be first discussed.

Carolyn Jean May, 17 years of age, testified that she left her home at 1515 Cumberland in Little Rock about 5:00 A.M. to walk to her mother's home in Highland Court several miles away. At 14th and High Streets, appellant and a friend of his were engaged in conversation and she talked with them. Appellant's friend walked across to a liquor store, purportedly to buy cigarettes, and the witness stated that subsequently Spencer placed a knife to her throat and told her that if she did as he said, he wouldn't hurt her in any way. Mrs. May stated she was scared, shaking, and begging him to take the knife away from her throat, and that he told her to put her arms around him and do as he said. They then went to his apartment where she stated that she was raped. When interrogated as to whether she tried to escape, she said that she looked out of the windows, saw that the roof was too high, and slanted, and that while Spencer did not have the knife on her at the time, she was fearful that he would draw it again. Spencer was living with another girl, Angie Lee Roberts; after the alleged rape, Mrs. May told appellant that she had to go to the bathroom, and in the bathroom she asked Angie to help her get away, but the latter refused, stating that she was afraid and "they would all come up missing". At that time Spencer came to the door and inquired what was taking so long. Spencer then went to the store to get cigarettes and returned to the Spencer apartment where appellant, Mrs. May, Angie Lee Roberts, and Larry

Metz (the person who had been with Spencer on the street) played cards. The witness stated that they all then went to a store to buy cold drinks, and that she tried to "motion" someone in the store in order to convey her predicament, but could not get anybody's attention. After returning from the store, they went across the street to the apartment of Metz. There, Mrs. May, according to her testimony, still looking for an opportunity to escape, stated that her feet were cold and she wanted her shoes (which were still at the Spencer apartment). Appellant, at first, was unwilling to let her go, and kept whispering to Angie. Finally, he agreed and the two girls then started to the Spencer apartment but before reaching it, the witness talked Angie into letting her go.

There was corroboration of some of this evidence by Angie Lee Roberts. She said there was a window in the bathroom, but it was too small to go through, and that when she had first arrived at the apartment, Larry had told her not to go upstairs. She said that Spencer told her not to let Mrs. May go; that the prosecutrix had begged, but that she (Angie) was afraid of Spencer. She said she had told Mrs. May not to say anything when they went into the store and that she heard Spencer tell Larry Metz, "Watch her." She testified that Spencer told her "not to let her [Mrs. May] go at all *** to hold her to keep her from going." She was then asked what happened after she let the prosecutrix leave, and she stated that Spencer was very angry and that the two of them circled several blocks looking for her; that on their return to the apartment, Spencer "tore into me", striking her for permitting Mrs. May to leave.

Spencer admitted intercourse, but said it was voluntary on the part of Mrs. May. Appellant, of course, argues that there was no rape, Mrs. May consenting, and it is vigorously contended that she had opportunities to mention her predicament to others (at the store and on the street) and that this establishes that no rape was committed. We do not agree. The matters mentioned, of course, were facts to be argued to the jury, including the failure to make outcry, but the

jury was the sole judge of the credibility of the witnesses and it was within its province to believe or disbelieve the witnesses, and to determine whether Mrs. May was acting under-duress and fear during the period of time that she was with the appellant and the others. In other words, there is no evidence in the case that establishes, as a matter of law, that no rape was committed. If the jury believed Mrs. May, the testimony was sufficient for conviction. We have said many times that corroboration is not necessary in a rape case. *Harrison* v. *State*, 222 Ark. 773, 262 S.W.2d 907, and cases cited therein. For that matter, as previously pointed out, there was, to a degree, corroboration of the testimony of the witness by Angie Roberts.

Appellant offered the following instruction:

"You are instructed that force is an essential element in any crime of Rape and it must be committed forcibly and against the will of the female. It is not the persistence with which the party accused intended to prosecute his alleged illegal design, but the force actually used that is the element in the crime of Rape.

"Before you can find this defendant guilty of the crime of Rape, you must find that the prosecutrix was actually under the influence of such alleged force at the time the act was committed. If there is a reasonable doubt, then you must acquit the defendant."

The court refused to give this instruction, stating that it was incorrect. We agree. The phrase, "It is not the persistence with which the party accused intended to prosecute his alleged illegal design, but the force actually used that is the element in the crime of Rape" is incorrect, for this implies that the force must take place at the moment of the criminal act. As long ago as 1878, this court, in *Bradley* v. *State*, 32 Ark. 704, said:

"It is often a matter of great difficulty in trials for rape, and of assaults with intent to commit rape, to determine whether the act complained of was

done with or without force, and whether with or without the consent of the party complaining, and this arises from the peculiar character and surroundings of the offense charged.

"Force is an essential element in the crime of rape. The term is general, and in its application the quantum of force is not to be taken into consideration, *provided the act be consummated against the will of the female.*" [Our emphasis.]

Aside from that, appellant's theory was completely covered by other instructions given by the court. For instance, appellant's Requested Instruction No. 1, which was given, states:

"You are instructed that before you can find this defendant guilty of the crime of Rape, you must first be convinced beyond a reasonable doubt that there was in fact forcible compulsion upon the alleged victim, and that the said alleged act of sexual intercourse was without her consent.

"If you should find that there was no forcible compulsion on the part of the defendant, then you should find the defendant not guilty."

Appellant's Requested Instruction No. 3, given, reads as follows:

"While it is not essential that the prosecutrix make an *outcry* either before or after the alleged act is committed, you are instructed that the failure of the prosecutrix to make an outcry or to make it known to other persons or strangers that she has been the victim of a Rape, should be considered together with all facts and circumstances as tending to show a want of resistance."

Appellant's Requested Instruction No. 4, also given, told the jury that it had a right to consider the subsequent silence of the prosecutrix as bearing on the question of whether or not she consented to the act of intercourse.

The State's Requested Instruction No. 1 was amended after objection of appellant, and given as follows:

"The defendant in this case is accused of the crime of Rape in the First Degree. First Degree Rape is the carnal knowledge of a female forcibly and against her will. A male is guilty of rape in the first degree when he engages in sexual intercourse with a female by forcible compulsion.

"If you find beyond a reasonable doubt that the defendant in this County and State, sometime before the filing of this information, did have carnal knowledge or actually penetrated the private parts of the prosecuting witness with his private parts, and that this was done by forcible compulsion and against her will, he is guilty of First Degree Rape.

"Now with regard to the force used, it may be violence or it may be putting the woman in fear, physically or mentally. In other words, the test is— was it against the will of the party upon whom the act was committed."

These instructions certainly covered the law relative to the offense charged and there can be no legitimate complaint that the jury was not properly instructed.

Affirmed.